OPINION
This is an appeal from property division in a divorce action arising in the Common Pleas Court, Family Division of Stark County.
The Assignments of Error are:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR TOWARD DEFENDANT-APPELLANT IN ADOPTING THE TESTIMONY OF PLAINTIFF'S EXPERT'S VALUATION OF DEFENDANT'S BUSINESS INTEREST, IN THAT SUCH TESTIMONY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR TOWARD DEFENDANT IN ADOPTING THE VALUATION TESTIMONY OF PLAINTIFF'S EXPERT CONCERNING THE BUSINESS INTEREST OF DEFENDANT, AS THE CONCLUSIONS OF PLAINTIFF'S EXPERT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR TOWARD DEFENDANT-APPELLANT IN ITS PROPERTY DIVISION AWARD TO PLAINTIFF-APPELLEE, IN THAT THIS AWARD TO PLAINTIFF-APPELLEE CREATES A PAYMENT OBLIGATION TO PLAINTIFF-APPELLEE FROM DEFENDANT-APPELLANT WHICH IS UNREASONABLE, INEQUITABLE, AND, BASED ON THE EVIDENCE, NOT REASONABLY POSSIBLE FOR DEFENDANT-APPELLANT TO PAY.
 STATEMENT OF THE FACTS AND CASE
The parties to this cause were married on August 25, 1977. A divorce action was filed by appellee in Stark County on February 1, 2000, after a marriage of over 23 years. No children were born of the union.
The magistrate conducted an evidentiary hearing on December 20, 2000 as to property division and spousal support as incompatibility was stipulated.
At such hearing, undisputed evidence indicated that appellant owned several current businesses: Buckeye Wrecking and Transfer, Inc., Industrial Property Management, Inc. and Mustang Leasing, identified as the "Buckeye Group". He and appellee also owned Holiday Bowl, Inc. and a restaurant in such establishment, the Holiday Bar and Lounge.
Two expert witnesses testified as to valuation of appellant's ownership interests. The qualifications of such experts were stipulated.
Different methods of valuation were utilized by each expert.
Appellant's expert, Terry Pfiefer, a C.P.A., set gross value at $1,235,465.00, for the business and real estate assets with a net value of $67,497.00. Mr. Pfiefer is also the accountant for appellant and his businesses.
Appellee's expert was Susan Collier Day, also a C.P.A.
Ms. Day's opinions placed the valuation of the Buckeye Group as a going concern at $1,395,568.00 plus personal property at $692,465.00 plus real estate of $695,900.00 less debts of $127,284.00 and $599,490.00 respectively for a net market value of $2,053,159.00.
The magistrate accepted the valuations of Ms. Day and divided the property interests equally based upon her valuations. The trial court accepted the magistrate's findings and recommendations.
 I., II.
The First Assignment of Error asserts that the acceptance of the opinions of Appellee's expert was against the manifest weight of the evidence while the Second Assignment of Error claims a lack of sufficient supporting evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279.
A review of a trial court's division of marital property is governed by an abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
Revised Code § 3105.171 governs the division of marital property:
 [§§ 3105.17.1] §§ 3105.171 Equitable division of marital and separate property; distributive award.
 Text of Statute (as applicable)
(A) As used in this section:
* * *
 (3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
 (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 (iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
* * *
 (b) "Marital property" does not include any separate property.
* * *
 (5) "Personal property" includes both tangible and intangible personal property.
 (6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
* * *
 (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
* * *
 (b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
 (B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest.
 (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 (2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.
 (3) The court shall provide for an equitable division of marital property under this section prior to making any award of spousal support to either spouse under section 3105.18 of the Revised Code and without regard to any spousal support so awarded.
* * *
 (E)(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.
 (2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.
 (3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.
 (F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 (4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
* * *
 (9) Any other factor that the court expressly finds to be relevant and equitable.
 (G) In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of "during the marriage."
 (H) Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.
 (I) A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court.
 (J) The court may issue any orders under this section that it determines equitable, including, but not limited to, either of the following types of orders:
* * *
 (2) An order requiring the sale or encumbancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court.
The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division.Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222.
An examination of the magistrate's decision, accepted by the trial court, indicates the finding's relative to the respective valuations were based upon certain distinctive approaches and support thereof.
Mr. Pfiefer stated that the Buckeye Group business operated at a loss for several years and therefore he omitted goodwill in his valuation. (T. at 35-36).
Appellant drew his $45,000.00 to $50,000.00 annual salary from his flea market sales.
Such expert utilized auction real estate prices with anticipated capital gains taxes deducted. (T. at 40-41).
All appraised values were provided to Mr. Pfeifer by appellant. (T. at 41-42). The real estate values were supplied to appellant by Coldwell Banker and Baier. The Coldwell appraisal omitted the Klutz corner property. (T. at 52).
Mr. Pfiefer excluded the Southway property as an asset but included its debt.
Ms. Day reviewed records from 1996 to April 2000, including canceled checks, general ledgers and W-2 statements. (T. at 44-45). She reviewed appraisals with appellant and his expert. She used the lower of the Auditor's appraised values as to some property. (T. at 53-54).
As to the 1549 Broadway property, she accepted appellant's value. (T. at 58-59).
Her approach was according to accepted accounting practice. (T. at 61).
While appellant is correct that she reviewed a three month scrap yard cash figure and extrapolated from there (T. at 67), she also reviewed all petty cash and checks to appellant for a four year period. (T. at 62-63).
The scrap yard received $84,048.00 over such three month period. (T. at 67).
Discrepancies were noted.
On August 5 a check was drawn for $4,600.00 but the scrap yard received only $3,000.00. (T. at 68.).
Customer checks received, such as from Phillips Metals, were cashed but the proceeds not deposited. (T. at 69).
Ms. Day found petty cash checks totaling $76,521.00, cashed payment amounts of $118,000.00 but only $84,000.00 proven. (T. at 70).
Her extrapolation resulted in over $400,000.00 unreported income per year. (T. at 72).
Sales were $2,000,000.00 to $2,500,000.00 per year over a two year period. (T. at 73).
Payroll W-2 records were inaccurate. (T. at 78).
She determined expenses were "fabricated". (T. at 64).
She found that all liabilities were included but not all assets. (T. at 66).
1099 forms were not prepared for subcontract labor.
This is only a partial summary of the opinions of each expert.
The magistrate was clearly presented with a picture which easily could have suggested incomplete reporting of income.
Mr. Pfiefer was the accountant for appellant. Ms. Day was unconnected to the businesses and reviewed available records.
The magistrate, had the opportunity to consider the credibility of witnesses and the business operations from testimony.
We find that ample evidence was presented to justify the conclusions drawn by the magistrate, and the resulting property division reviewed and approved by the trial court, and that no abuse of discretion occurred.
The First and Second Assignments of Error are rejected.
 III.
The Third Assignment of Error states that property division payment requirements were unreasonable and inequitable based upon the evidence.
While the payment period is limited, the evidence which the magistrate and the trial court were able to consider would support a finding of $400,000.00 annual unreported income to appellant
We conclude that an abuse of discretion in this regard is also absent.
The Third Assignment of Error is rejected.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Common Pleas Court, Family Division, Stark County, Ohio is affirmed.
Costs to appellant.
Hon. Julie A. Edwards, P.J., Hon. Sheila G. Farmer, J., Hon. John F. Boggins, J., concur.